UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| LINDA GORDON, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. CV221-033 |
| SEA ISLAND ACQUISITION, LLC, | ) |
| Defendant. | ) JURY TRIAL REQUESTED |

## COMPLAINT

**COMES NOW** Plaintiff Linda Gordon, by and through undersigned counsel, and hereby files this Complaint against Defendant Sea Island Acquisition, LLC (alternatively, "Sea Island"), showing the Court as follows:

## INTRODUCTION

1.

This is an action for age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* (the "ADEA").

2.

Ms. Gordon's employment was terminated by Sea Island because of her age and she seeks injunctive and equitable relief, lost wages and benefits, front pay or reinstatement, liquidated damages, attorney's fees, costs and all other available remedies under the ADEA.

## JURISDICTION AND VENUE

3.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 621,

*et seq.*, and 42 U.S.C. § 2000e-5(f)(3).

4.

Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c) because the unlawful actions giving rise to this lawsuit were committed in the Southern District of Georgia.

## ADMINISTRATIVE PROCEDURE

5.

All conditions precedent to jurisdiction under the ADEA have occurred. Ms. Gordon filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 20, 2019. See attached Exhibit "A".

6.

Ms. Gordon timely filed this Complaint within ninety (90) days of receipt of the EEOC Dismissal and Notice of Right to Sue letter, which was mailed on January 28, 2021. See attached Exhibit "B".

## PARTIES

7.

Ms. Gordon is a resident of Glynn County, Georgia. At the time the discriminatory conduct began, Ms. Gordon was 63 years old, and at the time her termination from employment became effective, she was 66 years old. At all relevant times, Ms. Gordon was an "employee" as that term is defined under the ADEA.

8.

Sea Island Acquisition, LLC is a foreign limited liability company incorporated in Delaware and authorized to do business in Georgia.

9.

At all relevant times, Sea Island was Ms. Gordon's employer and a "person" and an "employer" in an "industry affecting commerce" as those terms are defined by the ADEA, 29 U.S.C. § 630(a), (b), (h).

10.

Sea Island may be served with process by serving its Registered Agent, Kathy Hutcheson, 251 Dune Avenue, Sea Island, Georgia 31561.

## FACTS

11.

Ms. Gordon was hired as a Sales Assistant (more recently known as an "Administrative Assistant") for the Sea Island Department of Conference Sales on October 3, 2005.

12.

As a Sales Assistant and as an Administrative Assistant, Ms. Gordon performed duties of an administrative nature, assisting in particular the Sales Directors (formerly known as Sales Managers) and Executive Meetings Managers who were responsible for booking corporate or other groups for visits to Sea Island.

13.

For over ten (10) years, and through the Sea Island Company bankruptcy during which she was selected as the only retained Sales Assistant, Ms. Gordon performed her duties in a satisfactory manner.

14.

Over these years, it was Ms. Gordon and other administrative personnel who created the administrative structure and process underlying the sales.

15.

The Sales Directors and Executive Meetings Managers are managed by the Vice President of Marketing and Sales (formerly the Director of Sales), David Furnish.

16.

David Furnish was hired by Sea Island as the Director of Sales and later given the title of Vice President of Marketing and Sales.

17.

Mr. Furnish was Ms. Gordon's supervisor and the decision-maker for the decision to terminate her employment.

18.

From the beginning of his tenure of employment, Ms. Gordon was shunned in the workplace by Mr. Furnish.

19.

Within weeks of beginning work, Mr. Furnish repeatedly Ms. Gordon about retirement, including "What are you going to do when you retire?", Ms. Gordon responded that she had no plans to retire at that time.

20.

In January 2017, Mr. Furnish hired an administrative assistant (in addition to Ms. Gordon), Emily Rose, who was approximately 22 years old at that time.

21.

At approximately the same time Mr. Furnish hired Ms. Rose, he demoted another woman over forty (40) years of age.

22.

And immediately after hiring Ms. Rose, Mr. Furnish removed responsibilities from Ms. Gordon and assigned them to Ms. Rose.

23.

At approximately the time Ms. Rose was hired, a second higher paid administrative assistant position with opportunity for advancement was advertised but, contrary to Sea Island policy, the position was not included with other available positions on the Sea Island Web page used for that purpose.

24.

Ms. Katelyn Phillips, who was approximately 25 years old at the time, was hired for a higher paid administrative assistant position on or about February 1, 2019.

25.

Later in 2019, Ms. Rose's position was upgraded to a new administrative assistant position with increased pay and increased responsibilities. Contrary to Sea Island policy, the new, upgraded position was filled by Ms. Rose without having been posted for internal or external applicants.

26.

In early 2017, in the presence of Ms. Rose and Ms. Phillips, Mr. Furnish responded to a question from Ms. Gordon, asking rhetorically, "Why?" whereupon he then answered, "because you are so slow" in a tone, inflection and manner specifically intending to humiliate her in front of the younger co-workers.

27.

Soon after hiring Ms. Rose and Ms. Phillips, Mr. Furnish began affording them training opportunities, including training on new computer programs and software.

28.

Ms. Gordon also requested training and Mr. Furnish responded with hostility, stating that her lack of training was her own fault.

29.

After eventually giving her permission to attend one training class, she waited months for approval that never came.

30.

Ms. Gordon repeatedly asked about the training but it never was allowed.

31.

Without informing Ms. Gordon, Mr. Furnish specifically directed that Ms. Gordon not be provided training.

32.

On or about January 31, 2019, Ms. Gordon received a coaching memo falsely alleging performance and behavior issues.

33.

In March 2019, Ms. Gordon was absent from work for medical reasons from approximately March 7, 2019 through May 2, 2019.

34.

On or about June 21, 2019, Ms. Gordon received a write-up alleging performance failures. The allegations were false, and other assistants had performed in the same manner alleged and those assistant(s) were not written up.

35.

When her employment was terminated on July 10, 2019, Ms. Gordon was confronted with another write-up about performance of which she was never previously informed.

36.

After Ms. Gordon was terminated from employment with Sea Island, Mr. Furnish was the decision maker for hiring Ms. Gordon's replacement.

37.

Sea Island filled Ms. Gordon's position with a new employee who was approximately 30 years younger than Ms. Gordon.

38.

Mr. Furnish had a practice of setting up employees for failure and alleging false allegations of poor performance as the reason for terminating the employment of those employees.

39.

From the beginning of his tenure until at least Ms. Gordon's departure from Sea Island employment, Mr. Furnish drove from the workplace other older, married and/or pregnant female employees.

40.

During his tenure of Sea Island employment, Mr. Furnish was reported for gender-focused discriminatory misconduct in his supervisory role over his newly hired young female employees.

41.

During his tenure of Sea Island employment, Mr. Furnish was reported for disability-focused discriminatory misconduct in his supervisory role over other employees.

42.

During his tenure of Sea Island employment, Mr. Furnish was reported for age-based discriminatory misconduct in his supervisory role over other employees.

## CLAIM FOR RELIEF
## AGE DISCRIMINATION UNDER THE ADEA

43.

Ms. Gordon was well qualified for her position and she was performing her job at a satisfactory level at all times.  Prior to the effective date of her termination on July 10, 2019, after almost fourteen (14) years of faithful employment, and despite a long-standing progressive discipline system, she was never disciplined for any performance issue prior to January 2019.

44.

Performance issues alleged by Sea Island are false and a pretext for age discrimination, which was the cause of Sea Island's actions.

45.

Sea Island discriminated against Ms. Gordon with respect to her compensation, terms, conditions and privileges of employment because of her age, in violation of the ADEA, 29 U.S.C. § 623(a).

46.

Sea Island knowingly, willfully, and intentionally discriminated against Ms. Gordon, as set forth above and as further to be proved at trial, on the basis of her age in violation of the ADEA.

47.

Sea Island's discriminatory practices deprived Ms. Gordon of equal employment opportunities, wages, retirement, and other benefits, and equal treatment in the terms and conditions of her employment, thus injuring Ms. Gordon in an amount to be proven at trial.

48.

Ms. Gordon is entitled to an award of back pay and benefits, reinstatement or front pay, liquidated damages, injunctive relief, attorney's fees, and all other appropriate damages and equitable relief available under the ADEA.

49.

Sea Island's discriminatory acts were willful within the meaning of the ADEA and, therefore, Ms. Gordon is entitled to liquidated damages under 29 U.S.C. § 626(b).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

(a) Take jurisdiction of this matter and declare that Defendant violated Ms. Gordon's rights under the ADEA;

(b) Permanently enjoin Defendant, its officers, agents, successors, employees, assigns and other representatives, and all those acting in concert with them or at their direction, from further discriminating against Ms. Gordon or any other employee on the basis of age;

(c) Award Ms. Gordon all back pay, benefits, and other forms of compensation lost as a result of Defendant's unlawful discrimination;

(d) Award Ms. Gordon liquidated damages equal to her back pay, as a result of Defendant's willful violations of the ADEA;

(e) Order Defendant to rehire Ms. Gordon into her previous position of employment and any accrued advancement, or to award her front pay, as just, equitable and appropriate;

(f) Award Ms. Gordon all costs and expenses of this action, including reasonable

attorney's fees as authorized by law;

(g)     Award Ms. Gordon prejudgment and post judgment interest;

(h)     Grant a trial by jury; and

(i)     Award such other and further legal, declaratory and equitable relief as will effectuate the purposes of the referenced statute or as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this 28th day of April, 2021.

/s/ S. Wesley Woolf
S. WESLEY WOOLF
Georgia Bar No. 776175
*Attorney for Plaintiff*

WOOLF LAW FIRM
408 East Bay Street
Savannah, Georgia 31401
T: (912) 201-3696
F: (912) 236-1884
woolf@woolflawfirm.net